Our last case of the day is ATI Technologies ULC v. ARM Ltd. cases number 2019-91, 2092-2094. Mr. Mooner, are you ready for argument? I am, Your Honor.  Thank you, Your Honor. May it please the Court, I'm William Mooner on behalf of ATI Technologies. The PTAB's unpatentability decision should be reversed because, one, there was an admitted special definition that controlled claim construction in this matter that required a process called text or address shading, and two, it's indisputable and indisputed that no grounds in any of the petitions ever even alleged the presence in the prior art of this required text or address shading process. For those two reasons alone, the correct claim construction and the absence of any grounds alleging unpatentability under that correct claim construction, reversal is required here. Now, as you can tell from our briefs, there's a Let me just clarify something. You don't dispute that the claim construction standard here is broadest reasonable interpretation, correct? That's correct, Your Honor. Okay. I just want to be clear on that. Thank you. Thank you. Counsel, this is Judge Stoll. I have a question for you, too. I just want to know exactly what it is you challenge with respect to the board's construction. Is it fair to say that your unified shader must perform text or address shading? That's it exactly, Your Honor. Okay. And so, your appeal really is limited to that issue in terms of that construction. I mean, in looking at that one claim term, that's really what we should be focusing on is that question. Does that claim term require text or address shading? Yes. With regards to what's the correct construction of unified shader, the issue presented is whether text or address shading is a requirement of that shading unit. Okay. Thank you. Thank you. So, I'm going to actually focus on that claim construction and the effect it has on the board's decision. And just to start with the very basics, because to be honest with you, I don't have a statement of what the correct claim construction analysis should be and the law that it needs to require. So, they're all on the same pages. Whether it's the broadest reasonable interpretation or whether it's the Phillips standard, it doesn't matter. If the patentee specially defines a claim term, that definition is controlled. It doesn't matter that it's the broadest reasonable instruction. Now, the construction we've proposed here as the correct construction is a shading unit that performs both pixel color shading and texture address shading. That's our construction of the unified shader. And the 506 patent specially defines the claimed unified shader as exactly that. And I'll focus, as your Honor has mentioned, on the fact that it requires, the special definition requires, text or address shading. The patent specifically says, I'm quoting from appendix 159 at column 6, lines 50 through 55. This is from the patent. A unified shader is so named because the functions of a traditional color shader and a traditional text or address shader are combined into a single unified shader. The unified shader, again, this is still the patent defining unified shader, performs both color shading and texture address shading. Now... What about that sentence, this is and it says, in this way, any operation, be it for color shading or texture shading, may loop back into the shader and be combined with any other operation. Why isn't that reference to texture shading broadening out what the unified shader is? Because texture address shading is something that's specifically different from texture shading, but it's a process that can be used in texture shading. And if you look at the 506 patent, at column 10, starting at about line four, and it goes through this entire column, it describes an embodiment of this unified shader. And it's really describing three different things that it can do. One, it's going to receive rasterized values from a rasterizer. Those are going to be the color information and texture address for a particular pixel. And it's going to store those. And then what happens, this is on line seven of column 10, it reads up the three source operands from the memory and executes a pattern. And what it's describing there is shading, a modification that's occurring, that's happening to either the color information or that texture address information. And if you go below in column 10 at line 50, and again, this is on appendix 161, starting at about line 50 in column 10, the patent continues to describe exactly what's going on here, which is the initial rasterized texture address information that the unified shader gets from the rasterizer is going to cycle through this unified shader a number of times. And it's talking about indirection levels here. An indirection level of zero means that the texture address hasn't gone through and been shaded yet, hasn't gone through this loop. But it goes on to say, if the indirection level is one, that means it's no longer the texture address that was received from the rasterizer that the unified shader is using, it's the texture address as modified in loop one. And then if it loops through again, the texture address is even further removed from that initial texture address that was received from the rasterizer. And then once all of that texture address shading is done, however many steps, however many operations, however many source operands are applied to that texture address, once that looping is done, then the resulting texture address is used to make a texture fetch. It's used to return a texture value. That's steps five and six at the top of column 10. So the texture address shading is used to produce the texture address, the modified texture address that gets used in texture shading. And that's what that language of the specification you mentioned, Your Honor, is talking about. And there's... Counsel, just one point. This is Judge Stoll again. Just one point of clarification. With this material here that you've been referring to in column 10, was that in the specification as originally filed? I believe so, Your Honor. I can't say 100% one way or another, but it hasn't been challenged as not being properly part of this specification. And in fact, the board explicitly relied on the 506 patent there. In other words, it's not... I'm not referring to the 133 patent right now that the board had determined was not incorporated by reference. This is actually column 10 of the 506 patent. Oh, I'm looking at column 10. I see it. Thank you. Sure. And so to return to the special definition, it's an admitted special definition. The petitioners in the petitions and in subsequent replies said themselves, for example, appendix page 181 is in one of the petitions and appendix 575 is one of the reply briefs. This is a quote that the 506 patent, quote, gives the term referring to unified shader, quote, a definition unique to that patent. And then identifies that special definition as, quote, the 506 patent defines. And this is the petitioner. This is in the petition. The 506 patent defines a unified shader to mean a shading unit that performs both color shading and texture address shading. That's the petitioner saying there's a special definition. The experts confirmed there was such a special definition. Dr. Feister said, excuse me, in his declaration, for example, but also in his testimony, his declaration at appendix 5206, paragraph 38, he's talking about the fact that unified shader does have an ordinary meaning. But then he goes on to say, quote, the 506 patent, however, clearly does not use the term in this way. It's not using it in its ordinary meaning. And he goes on to say, clearly, it instead, quote, gives the term a definition unique to the patent. I, Dr. Feister, their expert, apply the 506 patent's definition of unified shader for purposes of this opinion in this declaration. And what is that definition? It's exactly what I just said. The 506 patent defines a unified shader to mean a shading unit that performs both pixel color shading and texture address shading. There was never any dispute that there was a special definition here. The board didn't dispute there was a special definition here. It just declined to apply it for its own reasons. In the final written decision and in the institution decision, in both of those, the board acknowledged that the ordinary meaning did not apply, excuse me, the ordinary meaning of unified shader did not apply here and that the board was not going to apply it here. For example, in the institution at Appendix 348, it said, we, the board, are not persuaded that the term unified shader has a plain and ordinary meaning. And again, in the final written decision, Appendix 10, we could not determine an ordinary and customary meaning of the term unified shader. The board didn't apply any ordinary meaning. It didn't apply the special definition. So, the board... Thank you, Mr. Ma. So, I'll pause there right now and reserve the rest of my time, please. Okay. Thank you. Let's hear from Mr. Anderson now. Yes. Thank you, Your Honor. Kevin Anderson on behalf of Appellate Farm. What I'd like to start with is that this discussion of texture address shading, whether it's called texture address shading or texture coordinate shading, the board did a thorough and exhaustive analysis of it. And in their reply brief and seemingly here implicitly in our argument, they are driving a distinction between texture address shading and texture coordinate shading. And I need to clear that up. In their opening brief on page 10, they said that text, and this is a quote, texture address shading, also known as texture coordinate shading. And then if we look at their positions actually below the board, they repeatedly said that the claim should be construed for texture coordinate shading. So, in the, for example, on appendix page 1834, which is the patent donor's response, this is a quote, API proposes that the unified shader be construed as a single shader circuit that can perform both color shading and texture coordinate shading. And on that same page, they said because texture address shading and texture coordinate shading are admittedly equivalent, that's the reason they should be construed. So, to see their reply brief and to hear their argument today is very confusing because the case below was always litigated, at least by them, and understood by everybody that texture address shading is the same as texture coordinate shading. In fact, I started to count, it's in every brief, and I started to count the appendix places where this was stated to be the same, and I stopped at and texture coordinate shading were stated by everyone to be the same. So, it's unsurprising that the board's analysis primarily used the term texture coordinate shading. If one looks at the board's claim construction analysis, and they did two, the board did a very yeoman's job here. They did two very lengthy and detailed analysis of this unified shader construction, one in the institution, and one in the final written decision. And they copied, obviously, those analyses were copied between the two petitions. But if one looks at... Apologies, sorry to interrupt. It appears that one of the council has dropped from, sorry, one of the judges has dropped from the call. We'll pause the recording and the clock. Please bear with me. Mr. Anderson, please continue, and you won't be docked for this time that we spent offline, okay? Please continue. Thank you, Your Honor. Yes, thank you, Your Honor. On this issue of texture address shading, the board extensively analyzed this, and I would direct the court to the appendix at page 25 to 28, actually ending at appendix page 29. And the board started, as one must, with the specific language of the claim. And the specific language of the claim is texture shading. Then the board did an analysis where it discussed both parties' reference to the texture address shading in the specification. It analyzed all the different terminology here. On the bottom of page appendix 25, the board accurately notes that, quote, the 506 patent does not define texture shading, texture address shading, or texture coordinate shading. And that's true. And frankly, I don't even know at this point what petitioners or what patent owner is trying to say texture address shading means. But the board then went on and analyzed all of these terms and ultimately concluded that regardless of what these terms mean, here's what's required by the claim. They don't identify any analysis that's incorrect with that. This was the fight that happened below. One can look at any of their briefs and see that the board addressed this fight on claims instruction about texture coordinate shading. And so it's unsurprising that the board went on and it had multiple holdings of invalidity. The first holding was under the board's construction and these territorial arguments, they made no challenge to that. And the board had multiple alternative holdings even under ATI's construction. Now, admittedly, the board characterized those alternative holdings under the term texture coordinate shading, but that's because ATI said a thousand times below, just as they said on page 10 of their opening brief here, that texture address shading and texture coordinate shading are the same thing. And on page 32 of the red brief, we detailed the citation, page 32 and 33, and then later in our brief, we detailed the citations where the board has alternate holdings even under ATI's claim construction. And the reply brief doesn't really challenge or even acknowledge those holdings, but the board did extensive analysis here, both under their own construction and ATI's alternative construction. I know there's a plethora of arguments raised in the briefing. I'm happy to address any questions that the court might have or to continue on. I'll pause for a second to allow if there's any questions on other issues and then I'll continue. Okay. So on the specific issue of the claims construction, with ATI below stating that texture address shading is exactly the same as texture coordinate shading, the board properly did an analysis of texture coordinate shading and determined on the motion to amend that the specification of the 506 patent doesn't even support that construction. And that was something that didn't even get appealed. That was the written description issue. We described it in our briefing. So as best I can tell, what ATI is asking this court to do is to sui sponte, provide a claim construction of texture address shading or texture coordinate shading that the board below said no one knows what it means and they don't identify what it means on appeal and the board said was not supported by written description. That would be an unusual outcome here on appeal. We don't think that's proper. And the actual analysis by the board where it went through every portion of the specification and the argument is correct. And you don't hear any specific challenge either. You don't see it in the briefs. You don't hear it on oral argument today saying this portion of what the board said was incorrect. They just don't like the ultimate outcome. But that's not liking the ultimate outcome does not mean there's error in that outcome. One would think that certainly under broadest reasonable interpretation that the board's extensive analysis is more than thorough enough and if there's something to actually complain about, we would hear it. Unless the court has any further questions on any of the issues, we'll stand on our briefing and the very thorough and detailed job that the board did below. Okay. We thank you, Mr. Anderson, for your arguments. We thank the parties for their... Let's see. No. We've got to hear from Mr. Mooner. Yes. Thank you, Your Honor. So the argument I just heard, I'll confess, has little relationship to the arguments that are in the briefs and the arguments and positions that are in the final written decision. So I'd like to focus on a few of those. The notion that we're making a distinction between text or coordinate and text or address shading is not correct. Text or address shading and text or coordinate shading are the same thing. It's armed. It's the petitioner who tried to argue that those were different things and they do mean the same thing. Text or coordinate and text or address agreed mean the same thing. Text or address shading, text or address is a modification of a text or address that's been received from the rasterizer. A modification of the text or address, text or coordinate, whatever you want to call it, that's been received from the rasterizer. They mentioned in our brief below, Appendix 409, we specifically say that it's text or address shading is our construction. We go on to say the ITC has agreed that in the 133 patent, which talks about text or coordinate shading, and in the 506 patent, the patent is the issue here. 506 uses text or address shading. 133 uses text or coordinate shading. They mean the same thing. So our point was ITC has already said, yes, use text or coordinate shading. Board, you should do the same. But it doesn't matter. Whether you look at the 133 or not, the 506 says it's got to do text or address shading. What we didn't just hear from ARM right now, and that's not in their briefs, is any argument or any explanation as to how they admitted that text or address shading is the special definition here, but it's somehow not proper to use it. We didn't hear anything from ARM about text or address shading being alleged in any of the grounds in the petitions. You didn't hear that because they didn't. And under SAS, because of that, they lose. Reversal is required here. They admit that text or address shading is required. They admit that text or address shading and text or coordinate shading are the same thing. It's the modification of a text or address. It's not text or shading, a completely different concept, which is what they argue in their petition. Because it's missing from the petition, the board could not have found that ARM and petitioners had met their burden of proof on proving that there was a unified shader here. They can't do it. They would be in violation of SAS. Are there any questions, Your Honors? It appears none, Mr. Miller, so we thank you for your argument. Thank you very much, Your Honors. This case stands admitted. The Honorable Court is adjourned until tomorrow morning at 10 a.m.